Dabs-AN, Ch.,
dissenting. The testator, Edward Tonge, devised and bequeathed his real and personal estate to his wife during widowhood, with remainder, in case of her death or mar *431 riage, to bis mother, Susannah' Tonge, during her life. He then, bj way of remainder, gave to James Boone Perry the nse thereof for life, “ and at his decease the said land, slaves and', premises shall be and is hereby vested in the male issue of the said James, and in default thereof, in the issue female surviving him : and if a general failure shall be at the death of the said James, I give said land and slaves to my cousin, John Withingham Sommers, on the same terms, conditions, limitations, and reservations as this is made liable to in respect to James’s interest therein in pursuance of this my will, and should there be a total failure of issue (immediate) on the death of the said John Withingham Som-mers, I give the said lands, slaves and the issue of the female slaves, to his, the said John Withingham Sommers’s brother, Jas. Sommers, his heirs and assigns forever.”
The Court of Appeals in Equity referred two questions arising on the construction of this will to the Court of Errors:
1. What estate did James Boone Perry take in the lands devised to him by the will ?
2. And if it should he ruled that he took a fee conditional, whether an executory devise could be limited upon such fee conditional ?
A majority of this Court have held, that James Boone Perry took but a life estate in the lands: remainder to his own issue as purchasers; and, in default of such issue, remainder to John Withingham Sommers, &c. This decision rendered the other question referred unimportant injhis particular case. It has, therefore, not been decided. The judgment of the majority differs so widely from what I humbly conceive to be the true construction of the will, that I feel constrained to express my dissent, and some of the grounds upon which my dissent is placed. I think I shall be able to show, that the decision, which has become at least the law of this case, is utterly at variance with all the precedents and authorities upon the subject.
I- do not think it possible for any one to rise from the study of the English cases, and English authorities of the very highest re *432 pute, without having adopted the conclusion, that in Westminster Hall, James Boone Perry would be considered as having taken a fee tail: a fee tail male in the first instance : and in default of male issue, a fee tail female. In order to present this question in a more striking and naked form, suppose James Boone Perry to have died, leaving issue (either male or female) surviving him, what estate would such issue have taken in England ? Who can doubt that they would there have taken the estate by descent, and not as purchasers ? If the issue of James Boone Perry (had he left such issue) would not have taken by descent, what becomes of the rule in Shelley’s case ? The rule is, “ that when ,the ancestor by any gift or conveyance taketh an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately to his heirs in fee, or in tail; the heirs are words of limitation of the estate, and not words of purchase.” 1 Rep. 104. The rule is applied, where the words heirs or heirs of the lody are used in a general sense, without such qualification as would restrict their meaning to a particular class or description of persons, other than those who would take under the canons of descent: or in the case of a fee conditional, other than those who would take as heirs of the body generally, or heirs male or female of the body. I have, in the circuit decree, given sufficient reasons why this rule, which is a rule of property, and not of construction, and which has existed as a principle of the common law for more than five hundred years, should not be violated or disregarded.
It is said that this is not a case falling within the operation of the rule ; that a fee conditional cannot be implied; that the will gives the estate at the death of James Boone Perry, not to the heirs of Ms lody, but to his issue, and that to construe the will, so as to make the estate a fee conditional, would be to create that estate by implication. I deny the correctness of every part of the foregoing propositions. I apprehend that the same rules of interpretation would apply to fees conditional, as exist in England in reference to estate’s tail. “ A devise to A. and his heirs male *433 forever, (Baker vs. Wall, 1 Lord Raym. 185,) or to A. for life, and after bis death to his right heirs male forever, (Lord Ossuslton’s case, 3 Salk. 334,) has been held to confer an estate tail male : the addition of the word “ male ” as a qualification of “heirs,” showing that a class of heirs less extensive than heirs general was intended. And the same construction obtains, where -a devise to a person and his heirs (Slater vs. Slater, 5 T. R. 335,) or to a pejson simply without any words of limitation, (Blaxton vs Slone,, 3 Mad. 123,) is followed by a devise over in ease of his death without an heir m'ale. It has even béen decided that a devise to one et hseredibus suis legitime proereatis, creates an estate tail, though the addition merely describes a circumstance which is included in the definition of heir simply, an heir being ex justis nuptiis procreatus. Such was the doctrine of the early authorities, and it was recognized and followed in the more recent case of Nanfan vs. Legh, 7 Taunt. 85,) where a devise to H. when he should Attain twenty-one, “ and to his heirs lawfully begotten forever, was held to make the devisee tenant' in tail.” 2 Jarm. on Wills, 232. In all these cases, and many others that might be cited; an estate tail was created by implication.
But in this case, no resort to implication is necessary. The will after the life estate to James Boone Perry, gives the property directly to his issue, and the word issue is a term equivalent to and convertible with “ heirs of the body.” “A devise to A. et semini suo, (Co. Lit. 96,) or to A. and his issue (Nightingale vs. Burrell, 15 Pick. 104,) clearly creates an estate tail.” 2 Jarm. on Wills, 236. That the word issue is equivalent to heirs of the body in questions like this, see Broadhurst vs. Morris, 2 B. and Ad. 1; Robinson vs. Robinson, 1 Burr. 38; Dodson vs. Grew, 2 Wils. 322; Edwards vs. Barksdale, 2 Hill. Ch. 196; Whitworth vs. Stuckey, 1 Rich. Eq. 404; Hull vs. Hull, 2 Strob. Eq. 174.
The fee conditional was an estate, which existed from the earliest periods of the English Common Law. It was originally what it was afterwards made by the statute de donis conditionali-bus, incapable of alienation from the course of descent marked *434 out by tbe terms of the gift or conveyance. But it having been ruled by the Judges of England, that when the tenant in fee conditional had issue born- alive capable of inheriting the estate, he had so far performed the condition upon which he held, as to enable him to alienate, or subject it to incumbrances, the great landed aristocracy found it necessary for the preservation of their hereditary rank, wealth and influence, to restore the law,'(by the interposition of Parliament) to its ancient condition. The statute de donis eonditionalibus was the consequence a law, which, however it may be looked upon by republicans, is doubtless well adapted to the state of things existing in that country, and eminently conducive to the preservation of their social and political institutions.
It was upon the estate in fee conditional that the statute de donis operated. It modified the estate as it then existed and was construed. It preserved the estate for the benefit of the issue of the 'grantee, and the reversion for the benefit of the donor, depriving the grantee of the power of alienation, and prescribed that the heirs should take the estate per formam doni. Thus, whatever estate was a fee conditional at Common Law, became under the statute de donis a fee tail; and, e converso, what would be construed an estate tail in England, must be a fee conditional wherever the Common Law prevails without the statute de donis.
This statute has never been of force in South Carolina. But the Act of 1712, which adopted the Common Law (with certain exceptions) as a code or body of laws for this State, (then a province,) has been considered as making of force such parts of the Common Law as relate to the estate in fee conditional. The estate has been judicially recognized as existing in South Carolina, by repeated decisions. The principles of the Common Law, in relation to this estate, have been enforced as rules of property. Titles have been settled, and the devolution of landed estates has taken place to a great extent, in accordance with these principles. And whenever questions of this nature have arisen, the Courts *435 have always resorted to the ancient Common Law for the principles which were to govern their decisions. It is probable that the estate was recognized as existing in*the earliest period of our history. For we find decisions to this effect in the first Law and Equity Reports that were ever published in South Carolina, in which the subject was treated as familiar, and the rules applicable well settled. In Murrell vs. Mathews, decided in 1802, 2 Bays’s Rep. 397, the testator, Robert Murrell, devised the land in dispute to the plaintiff, John Jonah Murrell, (who was his son,) “ and the lawful heirs of his body; ” but in case he, or the lawful heirs of his body should die, without lawful heirs, he devised the estate to his grand-son, Robert Huggins, and the lawful heirs of his body forever. John Jonah Murrell had lawful issue born alive; and during the life time of such issue, he alienated the land, in fee simple, to the defendant, Mathews. In this case, all the Judges were of the opinion that John Jonah Murrell took a fee conditional in the land, and that the birth of issue, and the alienation barred the remainder-man, and all claiming under him. The title of the defendant was held to be good ; and judgment rendered against him on the bond, which was given for the purchase money.
In Cruger vs. Heyward, 2 Des. Rep. 422, Col. Daniel Heyward devised his island, .Callewashie, to his son, Benjamin, but in case he died “ without lawful -issue, to his, (the testator’s) grand-son, Daniel Heyward, and his heirs forever.” It was argued at the bar, and held by the Court, that Benjamin took a fee conditional. It was a fee conditional by implication, and one in which the word issue was considered as equivalent to heirs of the body.
The next reported case is that of Jones ads. Postell and Potter, Harp. 92. It arose under the will of Thomas Snipes, who devised the land in question to his son, William Clay Snipes, “ to him and the heirs of his body forever. ” The Court says, in delivering its judgment, “ there can be but one opinion as to the character of the estate which William Clay Snipes took under the will of Thomas Snipes. The terms used, ‘to him and the heirs *436 of liis body forever,’ are precisely those which Lord Coke, and, on his authority, Sir William Blackstone, define as creating at Common Law a qualified or conditional fee.” It was further ruled, in that case, that the tenant in fee conditional, though he had issue born, could not by a devise prevent the estate' from descending per formam doni; a rule which has been followed ever since.
From 'this period to the present time, our reports are full of cases of this complexion. . The following are some of the published cases, in which the estate in fee conditional has been recognized : in some, incidentally, and, in others, directly, by-judicial decisions affecting the rights of the parties. Carr vs. Porter, 1 McC. Ch. 60; Henry vs. Felder, 2 McC. Ch. 330; Mazyck vs. Vanderhorst, Bail. Eq. 48; Izard vs. Izard, Bail. Eq. 228; Bedon vs. Bedon, 2 Bail. 231; Adams vs. Chaplin, 1 Hill, Ch. 267. Deas vs. Horry, 2 Hill, Ch. 244; Edwards vs. Barksdale, 2 Hill, Ch. 184; Whitworth vs. Stuckey, 1 Rich. Eq. 404; Hull vs. Hull, 2 Strob. Eq. 190; Hay vs. Hay, 3 Rich. Eq. 384. Some of these cases will be referred to hereafter in a more particular manner. Besides the published cases, there are ' others that have not been reported. And there is a great multitude of circuit decisions in which the rights of parties have been affected, that have never been carried before the appellate tribunals, and consequently have not found' their way into the books. So that the estate in fee conditional has struck root, deeply and broadly, in our system of law, as an institution of property. To do it violence now, by undermining, or by direct assault, to rob it of its just proportions, to deny it this or that attribute, or to withhold from it those ancient rules of construction by which the estate was ascertained, would be unwise and inconsistent. It would ■be-setting every thing afloat (as to this subject) upon a wide sea -of confusion and uncertainty. We do not affect to be wiser than our predecessors, and Courts above all other places should be and are distinguished by a firm adherence to established principles. And it is certainly better in every point of view, unless change *437 be imperatively called for by a' change of circumstances, to submit to principles' that have been sanctioned by long usage, than for the Court to undertake ‘the dangerous experiment of changing the old and establishing a new rule. And even where change is imperatively called for by a change of circumstances, it is better to invoke the interposition of the law-making power.
Our Courts have repeatedly said, that what constitutes a fee tail in England is a fee conditional in South Carolina. They have given this as a test, or standard, by which to ascertain when or where the fee conditional exists. And a very proper test it is; for, as has already been remarked, the statute de donis operated only upon fee conditional estates : converting them into fees tail. Without requiring any thing additional or stronger in the way of language, it furnished a different rule of interpretation of the same words. It is obvious upon the slightest reflection, that the structure of the two estates is precisely the same'; and they only differ, in regard to the right of alienation. I have been led into this course of remark from the fact, that the decision of the majority of the Court in this case could only have been made on a denial of this ride of interpretation as to what constitutes a fee conditional.
I will now advert again, for a brief space, to the rule in Shelley’s case. In addition to its feudal origin, as has been shown in the circuit decree, there is a profound philosophy in the rule, which well adapts it to the state' of modern society, and makes it an important principle in every system of jurisprudence, where it is essential to -preserve a distinction between estates by descent and estates-by purchase. Its policy is, “ that no person should be permitted to raise in another an estate, which was essentially an estate of inheritance, 'and -at the same time to make the heirs of that person purchasers; ” 4 Kent Com. 208. The reason which recommends it to the-modern legislator and jurist, is the necessity of adhering to the manifest distinctions between descent and purchase, and to prevent title by descent from being stripped of its incidents, and disguised with the properties of a purchase. *438 Harg. Law Tracts, 489. Or, as Lord Thurlow tersely and clearly expresses the same idea in Jones vs. Morgan, 1 Bro. 206, whoever “ takes in the character of heir must take in the quality of heir.”
It was this policy, doubtless, which recommended it to the Courts of South Carolina. It was recognized in this State as early as 1795, in Dott vs. Cunnington, 1 Bay 453, and Carr vs. Porter, 1 McC. Ch. 60, was decided upon the authority of the rule. Since that case, it has uniformly been considered as of binding obligation in a case proper for its application; and many cases might be cited to this effect. After all this, I am not a little astonished to hear learned jurists sneering at the rule as artificial and arbitrary, and one that it was- desirable to get rid of by the judicial authority. I will assume, therefore, in what I shall hereafter say, that the rule is of binding force in South Carolina.
Let, then, the construction of Edward Tonge’s will be squared by the requirements of the rule. He gave to James Boone Perry an estate for life, and at his decease he gave the estate to his issue. Is not this the very case to which the rule applies ?
In Robinson vs. Robinson, 1 Burr. 38, the testator gave the estate to Launcelot Hicks, during his life, “ and no longer, and after his death to such son as he may leave lawfully begotten,” and for default of such issue, over. It was construed to be an estate tail, and not a gift to the issue as purchasers. And Lord Mansfield said that “ by law the testUtor could by no words make the father tenant for life, and the heirs male of his body purchasers. ’ ’
King vs. Burchell, Amb. 379, Fearne 163, is a leading case to the effect, that a devise for life, with remainder to issue male, and for want of such issue to issue female, and on failure of such issue then over, created an estate tail by Aurtue of the rule ; and the words “to tlio heirs and assigns of such issue, male or female,” did not prevent-the operation of the rule. This case bears a striking resemblance to the one arising under Edward Tonge’s will.
*439 In Dodson vs. Drew, 2 Wils. 322, a devise to one for his natural life, and after his decease to the use of the male issue of his body, and the heirs male of the body of such issue male, and for want of such issue male, then over, was held to create a fee tail.
Cases of this kind might be multiplied to an indefinite extent. There are many cases in which. a gift or devise to a person for life, and after his death to the heirs of his body, or the issue of his body, have been construed as giving the first taker only a life estate, with a remainder to the issue as purchasers. But this result happens by force of the context, in which words are used, which modify and restrict the meaning of the words heirs of the body or issue, so as to make them designate a particular class of persons. In these cases, the heirs of the body as such do not take as purchaiers. They take, because the words are explained to be used in a limited sense, descriptive of the individuals amongst the heirs general, who. are to take.
It is clear that the rule is not violated in cases like these, because it does not apply.
In Edward Tonge’s will, there is nothing in the context to control the general meaning-of the word. 11 issue.” There are no words of modification showing that the issue are to take in a way inconsistent with the usual course of devolution in the case of an estate tail, or fee conditional. He intended the issue of James Boone Perry to take in indefinite succession. He did not intend that the estate should go over to John Withingham Sommers, from the line of James Boone Perry, as long as there was any of his issue extant. If this be true, and who can doubt it, then it was a fee conditional.
It was urged with much fervor, that James Boone Perry was to take a life estate, and his issue as purchasers, because the limitation over on the failure of such issue to John Withingham Som-mers, &e., restricted the words of the direct grant to the issue, so as to make them mean a particular class of isspethat is to say, issue living at James Boone Perry’s death only. This is demanding as a postulate, that which remains to be proved. ' It is *440 of course not denied, in relation to personal property, that when there is a direct grant to the issue, or heirs of the body, generally in the first place, which standing by itself, would make the limitation too indefinite and remote for the issue to take as purchasers, but which is followed by an ulterior valid limitation in favor of a third party, this subsequent limitation has the effect of restricting the generality of the terms of the gift to the issue, so as to make them mean a grant to ihsue living at the death of the first taker: in which case the issue would take as purchasers. That rule of construction was applied to the will of Edward Tonge as to the personal estate, by the circuit decree in this very case, and affirmed by the Court of Appeals, though both the real and personal estate was disposed of in the same words. A bequest to one and his issue, or the heirs of his body, with a limitation over on his dying without leaving issue at the time of his death, will give the issue an estate as purchasers after the termination of the estate for life of the first taker. Read vs. Snell, 2 Atk. 642; Lampley vs. Blower, 3 Atk. 396; Henry vs. Means, 2 Hill, 328; Henry & Talbird vs. Archer, Bail. Eq. 535.
Rut where is the authority that this circumstance alone is sufficient to warrant the same construction in reference to real estate ? The words heirs of the body or issue are capable of restrictive modifications by the context, both as to the real and personal estate. This is clear. That their meaning, however, is more controllable and susceptible of explanation in another' than the technical sense, when applied to the former, than the latter, is also indisputable.' And what I insist on is this : that when 'real estate is given to .one, and the issue or heirs of his body, the simple fact, that there is a valid limitation over on the event of the first taker’s dying without leaving issue, or heirs of his body, is not sufficient to make the issue or heirs of the body take an estate in remainder as purchasers, as it does in the case of personal estate. Forth vs. Chapman, 1 P. W. 663; Mazyck vs. Vanderhorst, Bail. Eq. 48; Hull vs. Hull, 2 Strob. Eq. 190. This is not sufficient to qualify the technical and general sense of those *441 words. And yet it seems to me that the decision of a majority of this Court has turned in a great measure upon such a doctrine. Some of the cases go a great deal further, and decide that where real estate is given to one and the heirs of his body, or his issue, with a limitation over in the event of the first taker’s dying without issue of his body living at the time of his death, still this does not qualify or restrict the general sense of the words of a direct gift to the issue, so as to make them take as purchasers.
In Richards vs. Lady Bergavenny, 2 Vern. 324, the devise was to Lady Bergavenny for life, and to such heir of her body as should be living at the time of her death, and, in default of such issue, then over. The issue did not take as purchasers. It was held to be an estate tail.
In Wright vs. Pearson, Amb. 358, the devise was to E. and his assigns for life, remainder to trustees to support contingent remainders, remainder to the use of the male heirs of the body of E. lawfully to be begotten, and their heirs: provided, that in case E. should die without leaving any issue of his body living at his death, then over: it was held by Lord Keeper Henley, to create an estate tail inE. Fearne on Eem. 126.
“ Where a devise to a person and his issue, (or to him and the heirs of his body,) is followed by a limitation over in case of his dying without leaving issue living at his death, the' only effect of hese special word's is to make the remainder contingent on the described event. They are not considered as explanatory of the species of issue included in the prior devise, and therefore do not prevent the prior devisee from taking an estate tail under it. The result simply is, that if the tenant in tail has no issue at his death, the devise over iiakes effect; if otherwise, the devise over is defeated, notwithstanding a subsequent failure of issue.” 2 Jarm on Wills. 359.
In Whitworth vs. Stuckey, 1 Rich. Eq. 404, the devise under the will of John Baxter Fraser was to his son, “ for and during his natural life, and at his death to the lawful issue of his body ; and if he should die without lawful issue living at the time of his *442 death, then oyer. It was held, that the limitation to the lawful issue of the deyisoe’s body served only to enlarge his estate to a fee conditional at common law, and did not give the issue a remainder as purchasers. See Hull vs. Hull, 2 Strob. Eq. 190, and Hay vs. Hay, 3 Rich. Eq. 384, where the same rule of construction prevailed.
Much was said at the bar about the absurdity of a rule of construction, which as to the personalty would give the issue as purchasers- an estate by way of remainder, while as to the realty, devised in the same language, and in the same clause of the will, the first taker should be considered as taking an estate in fee conditional. I cannot undertake to say how far the judgment of the majority of this Court has been influenced by this kind of argument. That, in a case where real and personal estate are given, in the same clause and language, to one and his issue, or the heirs of his body, and, if he dies without leaving issue, then over, the first taker will have a fee conditional in the real estate, and a life estate in the personalty, with remainder to the issue as purchasers, is sustained by the most conclusive authorities. The distinction is taken upon the most satisfactory grounds. It results from the different nature of the two species of property. In reference to the real estate, it comes under the operation of the rule in Shelley’s case, which is established upon impregnable foundations of reason and authority. As to both species of property, it is obviously the intention of the testator to give an estate to the issue. Inasmuch as the real estate is descendible, the intention is satisfied, without infringing the rule in Shelley’s case by the issue taking by way of limitation. The estate must descend to themyx?r formam doni, unless the first taker, upon the performance of the condition, shall have alienated. But personal property not being- descendible, the issue or heirs of the body, as such, could take nothing under a bequest like this. Unless they take as purchasers, the first taker must have an absolute estate. Therefore, as the rule does not apply to personal estate, and the intention of the testator would be otherwise defeated, the issue *443 are allowed, by a favourable construction in tbeir bebalf, to take as purchasers, which is the only character in which they could take at all.
Forth vs. Chapman, 1 P. Wms. 663, is the leading case in the English Courts upon this point. It has been strictly followed in our Courts, in Mazyck vs. Vanderhorst, Bail. Eq. 48, and in Hull vs. Hull, 2 Strob. Eq. 190. Instability as to the rules which regulate the descent, and distribution of property, resulting from a change of judicial opinions, is mischievous to the last degree.
There- was a disposition, in the construction of Tonge’s will, to give to the testator’s intention a controlling force and effect, which, in questions of this sort, is beyond what is legitimate. The rule, that the testator’s intention is to govern, is subordinate to other rules. One of these is, that where the testator has used technical words, the technical meaning will prevail, unless he has sufficiently explained, in the context, that he has used those words in some .other than the technical sense. The intention is to be carefully and patiently sought. But to seek for it, without the aid of this, and other rules, which have been sanctioned by wisdom and experience, is to embark upon the' voyage of discovery without chart or compass. It would give rise to the greatest degree of uncertainty. The interpretation of no will could be known, until it had undergone judicial construction.
If it be ascertained, that the technical import of the language employed, and which is not explained in the context to have been used in a different sense, would create a particular kind of estate, then the intention of the testator in contradiction of this, is wholly unimportant. Thus, in the case of a gift to one generally, and the heirs of his body: or a gift to one for life, and at his death to the issue of his body, if it appears from an examination of all the parts of the will, that it was the testator’s intention to give the estate to the first taker, and to his issue after him in indefinite succession, it is a fee tail in England, and a fee conditional in South Carolina, no matter what may have been the further *444 intention of the testator. When the primary intention to create what is considered a fee conditional is manifest, the express limitation of the estate of the ancestor to the period of his life, is utterly immaterial. And the most positive and unequivocal words restricting the ancestor’s estate to the period of his life, and inhibiting its continuance beyond that period, will not affect the construction.
The express limitation of the estate to the ancestor for life, is as clear an indication, that his estate is not to be extended beyond that period, as any superadded words of negation however strong, could possibly make it. It is the gift of the estate to the issue generally, to be enjoyed by them in indefinite succession which stamps the estate as a fee conditional: the attributes of which the testator is not permitted to change, or modify, whatever may be his intention, (a) On the contrary, if an estate be given to one, and at his death to the heirs of his body, and it appears from the context, that it was the testator’s intention not to give the estate to the heirs of the body generally, but to a particular class of his heirs, namely, those who should be living at the death of the first taker, the ancestor would take but a life estate, and the heirs of his body living at his death, would take in remainder as purchasers. (Jesson vs. Wright, 2 Bligh, 1.)
By reference to Edward Tonge’s will, it will be perceived, that after the life estate given to his wife and mother, he gave to James Boone Perry a life estate, and at his decease, to his male itesue, and in default of such, (that is, of such male issue,) to his issue female surviving him, &c. Is there any thing here, clearly to indicate, that the male issue were not intended to take in indefinite succession, if they took at all: for we have shown, in the preceding pages, that there being a limitation over, which as to the personal estate would be valid, is not sufficient to qualify the generality of the term “issue” when applied to real estate, so as to make it mean issue living at the death of the first taker. It was only on the default of the male issue, that the estate was to go *445 over to the issue female surviving him, (James Boone Perry.) It was not to go to the female issue, until the whole line of the male issue had run out, and this might not be until a remote period.— There are a thousand cases to show that the words “ in default of issue’’ or “in default of such issue,” mean an indefinite failure of issue. Some stress was laid upon the word “ surviving” him, which was applied in the will to the female issue, and not to the issue male. This could have no effect upon the gift to the male issue. This could not be stronger than if the testator had said, upon the default of the male issue, I give the estate A. B. and C. the daughters of James Boone Perry. This clearly would not have given the estate to the male issue as purchasers : for it was to descend in the male line, until ifhad entirely failed, before it was to go to the female issue at all.
For the foregoing reasons I dissent from the judgment of a majority of this Court. It is calculated to produce, if it prevails as an authority, some radical changes in the rules of law on this subject, and will probably lead to much litigation.
I had intended to submit some remarks on the other question referred to the Court (of lírrors.) But this opinion is already long, and a.ny thing I might say on the other branch of the case would be merely speculative.

 Robinson vs. Robinson, 1 Burr, 38; 4 Burr, 2579; 2 Wm. Bl. 698.